[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11048

_____

ALIN POP,
individually and on behalf of
all those similarly situated,

Plaintiff-Appellant,

*versus*

LULIFAMA.COM LLC,
MY LULIBABE LLC,
LOURDES HANIMIAN,
a.k.a. Luli Hanimian,
TAYLOR MACKENZIE GALLO,
a.k.a. Tequila Taylor,
ALEXA COLLINS, et al.,

2                    Opinion of the Court                    24-11048

                                                    Defendants-Appellees,


HALEY PALVE,
a.k.a. Haley Ferguson,


                                                             Defendant.


_____


Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-02698-VMC-UAM

_____


Before ROSENBAUM, BRANCH, and KIDD, Circuit Judges.

BRANCH, Circuit Judge:

    Plaintiff Alin Pop appeals the district court's dismissal of his putative class action complaint against LuliFama.com LLC ("Luli Fama") and other defendants for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

    In his complaint, Pop alleged that he purchased Luli Fama swimwear after seeing various social media influencers, whom Pop also named as defendants, wearing the swimwear and tagging Luli Fama in Instagram posts. At the time of his purchase, Pop believed that the influencers were giving their unpaid endorsements of the Luli Fama products. As it turned out, however, Pop was mistaken;

Luli Fama was actually paying the influencers for their endorsements.  And Pop's mistake stemmed from the fact that neither Luli Fama nor the influencers disclosed the payments.  Pop alleged that failing to disclose the payments violated FDUTPA, which generally prohibits, as relevant here, "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

The district court dismissed Pop's complaint for, among other things, failing to comply with Federal Rule of Civil Procedure 9(b).  According to the court, because Pop's FDUTPA claim sounded in fraud, Rule 9(b)'s particularity requirement—which requires plaintiffs "alleging fraud" to "state with particularity the circumstances constituting fraud"—applied to the claim.  Fed. R. Civ. P. 9(b).  Pop's complaint, however, failed to allege the facts underlying his claim with the required particularity.  The court therefore dismissed the complaint with prejudice, and Pop now appeals.

After careful review and with the benefit of oral argument, we agree with the district court that Rule 9(b)'s particularity requirement applies to FDUTPA claims that sound in fraud and that Pop's complaint asserted such a claim.  We also agree that Pop failed to allege the facts underlying his claim with the required particularity.  We thus hold that the district court correctly dismissed Pop's complaint.  And because Pop failed to properly request leave to amend, we hold that the district court was not

required to give Pop another chance to plead his claim, at least not under the circumstances of this case.  Accordingly, we affirm.

## I.    Background

### A.    *Factual Background*[1]

This case arises from the allegedly deceptive and misleading online promotion of Luli Fama products.  Pop sues on behalf of himself and all others similarly situated.  There are 11 defendants.  The first group of defendants consists of Luli Fama; My LuliBabe, LLC; and Lourdes Hanimian.  And the second group consists of Taylor Mackenzie Gallo, Alexa Collins, Allison Martinez, Cindy Prado, Gabrielle Epstein, Haley Palve, Leidy Amelia Labrador, and Priscilla Ricart ("the influencer defendants").  Relevant here, Pop's complaint asserted a FDUTPA claim against Luli Fama and the influencer defendants.[2]  In support of the claim, the complaint alleged as follows:

"Luli Fama is a swimwear designer, manufacturer[,] and reseller that came to fame with the rise of Instagram."  Lourdes

---

[1] Because this case reaches us at the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[2] Pop also alleged an unjust enrichment claim and a negligent misrepresentation claim against all the defendants.  Because he did not contest the district court's dismissal of those claims in his opening brief on appeal, he has abandoned those claims.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).  We thus do not discuss the claims any further.

Hanimian is the "founder, owner, CEO[,] and product designer for Luli Fama." "She personally oversees all of [Luli Fama's] operations, swimwear design, manufacturing, marketing, [and] social media." "Despite having two brick-and-mortar stores in Miami-Dade, Luli Fama thrives due to its sales over the [i]nternet." Indeed, "most of Luli Fama's online sales come from social media, including Instagram." To drive its online sales, Luli Fama partners with social media "influencers," who "advertise" Luli Fama's products online. Hanimian "supervises Luli Fama's relationship with the [i]nfluencers." According to the complaint, "[a]sking social media influencers to advertise its products and disguise such advertising as honest consumer recommendation is a large part of Luli Fama's strategy." Luli Fama makes "tens of millions of dollars" through influencer advertising, and in return, it pays "significant monies" to the influencers that advertise its products online.

Pop "is following Defendants on Instagram." The influencer defendants that Pop is following on Instagram are his "favorite influencers." At an unspecified time, Pop saw on Instagram that unspecified influencer defendants were wearing unspecified Luli Fama "products" in unspecified Instagram posts in which they tagged Luli Fama. According to Pop, "by wearing and tagging Luli Fama products in their posts, the [i]nfluencers indisputably advertise[d] and endorse[d] the[] products." But despite "being compensated" by Luli Fama for their advertisements and endorsements, the influencer defendants failed to disclose their financial relationship with Luli Fama. Indeed, "none of the

[i]nfluencers use[d] the 'paid partnership' tag suggested by the FTC or other disclosures like '#ad,' or '#sponsored.'"

"Pop followed . . . what he believed to be the honest advice of the [i]nfluencers" regarding the "products." "Given the fact that the products were worn by his favorite influencers, [Pop] decided to purchase Luli Fama products and placed Order 1152147." The complaint did not state which products Pop purchased or which defendants' endorsements led to his purchase, but the complaint made clear that Pop purchased "such products as a present for his spouse."

Pop alleged that by "[r]elying on the undisclosed paid advertising, [he] and the class members purchased products that proved to be of a lower value than the price paid and therefore suffered damages."[3] Pop also alleged that he "paid a premium for Luli Fama swimwear," and that "[c]ompared to other swimwear brands (i.e., Victoria's Secret), Luli Fama is approximately 100% more expensive." When he tried to return the products, Luli Fama did not accept the return. And when he "tried to sell the unused product on eBay," he "received only small offers that barely covered shipping, showing one more time that the value of the products is much lower than the price he paid."

---

[3] Pop did not explain how the products he purchased were "of a lower value than the price paid." He alleged that the products "proved to be of an inferior quality," but again, he did not provide any details to support his assertion.

As indicated, the gist of the complaint was that the influencer defendants "misrepresented the material relationship they have with [Luli Fama] by promoting Luli Fama products without disclosing the fact that they were paid to do it." In other words, "both Luli Fama and the [i]nfluencers devised a scheme in which the influencers tag or recommend Luli Fama products, pretending they are disinterested and unaffiliated consumers."

All that said, the complaint did not specify many details, including which defendants' posts Pop saw, when he saw those posts, which products the defendants were promoting, or exactly how the defendants were promoting the products. Indeed, the complaint's substantive allegations mentioned a specific defendant's name and posts only three times. And even then, the allegations were either still lacking in detail or were irrelevant. First, on pages five and six, the complaint provided screenshots of two of Alexa Collins's posts in which she allegedly "advertised for Luli Fama on Instagram . . . without mentioning even once that she is paid." But the complaint did not allege that those posts caused Pop to purchase Luli Fama products, or that the products that Collins was wearing were the ones that Pop bought. Nor did the complaint state when Collins made the posts.[4] Second, on pages 11 and 12, the complaint stated that "Defendant Alexa Collins advertises alcohol on her Instagram account without

---

[4] It appears that one post has a date, but the date is illegible. The other post appears to state only that it was posted "5 hours ago." Pop's complaint did not provide any relevant information about when the posts were made.

disclosing that she is paid to do so," and provided two posts in which Collins allegedly promoted alcohol.  But the complaint did not connect those posts to any harm suffered here.  And third, on pages 13 and 14, the complaint provided two posts by Defendant Gabrielle Epstein to show that "many of the [i]nfluencers are familiar with the FTC guidelines and *properly display the required disclosures*" at times.  (emphasis added).  Again, the posts were seemingly unconnected to the allegations underlying Pop's claim.

The complaint also contained numerous allegations about influencer advertising in general.  For example, it asserted that "[i]n the last three years, Instagram has become one of the most popular ways to influence consumer behavior on social media."  The complaint also pointed out that the FTC has sought to curb deceptive advertising on social media.  And finally, the complaint stated that, generally, influencers are "acting as advertisers for hire by," for example, "posting fake reviews for sponsored products or failing to disclose that they were paid to create the content displayed on their profile."  However, the complaint did not connect any of these general allegations to this case.

Given the above facts, Pop alleged that Luli Fama enabled the influencers to "engage[] in a deceptive act or unfair practice, by engaging in deceptive conduct and statutory violations."  He also alleged that the influencers "engaged in a deceptive act or unfair practice, by engaging in fraud and statutory violations," and that by "failing to disclose material connections," Luli Fama and the influencers "violated Section 5(a) of 15 U.S.C. § 45(a) which

represents a *per se* violation of 'FDUTPA.'"  Pop sought damages totaling over $10,000,000 for the entire class, as well as an injunction, declaratory judgment, and attorney's fees.

### B.    Procedural History

Pop initially sued in Florida state court.  The defendants removed the case to the Middle District of Florida, where the case proceeded on the original state-court complaint.

The defendants moved to dismiss the complaint.[5]  The district court granted the defendants' motions with prejudice.[6]  The district court held that because Pop's FDUTPA claim "sound[ed] in fraud," Federal Rule of Civil Procedure 9(b)'s particularity requirement[7] for allegations of fraud applied.  Under that standard, Pop's complaint failed because he failed to plead (1) which posts led him to purchase Luli Fama products, (2) which defendants

---

[5] After failing to serve Haley Palve, Pop voluntarily dismissed all claims against her.

[6] The district court initially dismissed all claims against all defendants except Gabrielle Epstein, whose motion the district court denied as moot.  Before ruling on the defendants' motions to dismiss, the district court dismissed Epstein from the case after a purported settlement.  But Epstein subsequently moved to reopen the case against her, and the district court granted her motion.  The court then ruled on and granted Epstein's previous motion to dismiss on the merits.

[7] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

made those posts, (3) when the defendants made those posts, (4) which products he purchased, (5) how or why the products were of an inferior quality, or (6) why he was unable to resell the products. The district court then held that the complaint would fail even under the ordinary pleading requirements because Pop failed to plead, as a legal matter, the required elements of FDUTPA: a deceptive or unfair trade practice, causation, and actual damages. The district court thus granted the motions to dismiss the FDUTPA claim with prejudice, finding that further amendment would be futile.

Pop timely appealed.

## II.    Standard of Review

We review *de novo* the grant of a motion to dismiss, accepting all well-pleaded facts as true and construing them in the light most favorable to the plaintiff. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). We also review *de novo* the district court's denial of leave to amend a complaint on futility grounds. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236 (11th Cir. 2008). "[W]e may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

## III.    Discussion

Pop advances three main arguments on appeal. First, he argues that the district court erred in holding that Rule 9(b)'s particularity requirement applies to his FDUTPA claim. Second,

he argues that his complaint stated a plausible FDUTPA claim. And third, he argues that even if his complaint failed to state a claim, the district court should have granted him leave to amend rather than dismissing with prejudice.

We address each issue in turn. Ultimately, we conclude that all of Pop's arguments fail, and we therefore affirm.

A.    *Rule 9(b)'s particularity requirement applies to Pop's FDUTPA claim*

We divide this section into two parts. First, we establish that Rule 9(b)'s particularly requirement applies to FDUTPA claims that sound in fraud. Second, we explain that because Pop's FDUTPA claim sounds in fraud, Rule 9(b) applies to his claim.

1.    Rule 9(b)'s particularity requirement applies to FDUTPA claims that sound in fraud

The district court concluded that Rule 9(b)'s particularity requirement applied to Pop's FDUTPA claim because the claim "sound[ed] in fraud." On appeal, Pop argues that Rule 9(b) never applies to FDUTPA claims. The defendants, on the other hand, argue that though Rule 9(b) does not always apply to FDUTPA claims, it does when those claims sound in fraud.

Whether and when Rule 9(b)'s particularity requirement applies to FDUTPA claims is an issue of first impression in this Circuit. After review, we agree with the defendants and hold that Rule 9(b)'s particularity requirement applies to FDUTPA claims when those claims sound in fraud.

The pleading standards in the Federal Rules of Civil Procedure "appl[y] to state-law claims litigated in federal court." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1130 (11th Cir. 2019). Under Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule requires a plaintiff to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Rule 8 . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Rule 9(b) is one such exception. *See id.* Under that rule, "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Courts refer to this heightened pleading standard as Rule 9(b)'s "particularity requirement." *See Iqbal*, 556 U.S. at 686.

Per Rule 9(b)'s text, the particularity requirement applies when a plaintiff "alleg[es] fraud." Fed. R. Civ. P. 9(b). Whether a

plaintiff "alleg[es] fraud" under Rule 9(b) depends on the factual allegations underlying a plaintiff's claim—not how the plaintiff styles his claim. *See Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (finding that Rule 9(b) applied to the plaintiff's Arizona Consumer Fraud Act claim because the claim was "*based on allegations* that [the plaintiff] relied on [the defendant's] intentional misrepresentations to his own detriment" (emphasis added)); *Kahn v. Walmart Inc.*, 107 F.4th 585, 601 (7th Cir. 2024) (explaining that "[t]he applicable pleading standard does not turn on a formalistic invocation" of certain words, but "depends instead on the plaintiff's factual allegations"). For that reason, we have held that so long as a claim "sound[s] in fraud" based on the allegations underlying the claim, Rule 9(b)'s particularity requirement applies. *Wilding*, 941 F.3d at 1127. That the plaintiff does not call his claim "fraud" is not dispositive. *See id.*

Applying these principles, we have found that unjust enrichment, civil theft, and negligent misrepresentation claims that "sound in fraud" must comply with Rule 9(b)'s particularity requirement. *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022) ("Because [the plaintiffs'] claims of civil theft and unjust enrichment 'sound in fraud,' they are subject to Rule 9(b)'s requirements." (quoting *Wilding*, 941 F.3d at 1127)); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (holding that "Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims" under Florida law because those claims "sound[] in fraud" (quotation omitted)). And we came to those conclusions even though the plaintiffs did not

style their claims as "fraud," and even though the elements of
unjust enrichment, civil theft, and negligent misrepresentation do
not perfectly overlap with the elements of fraud.

As our precedent shows, then, the rule is that a claim that
"sounds in fraud" based on the allegations underlying the claim
must comply with Rule 9(b)'s particularity requirement. *See, e.g.*,
*Wilding*, 941 F.3d at 1127. Consistent with that rule, we hold today
that FDUTPA claims that sound in fraud must comply with Rule
9(b).

Pop resists our conclusion, arguing that FDUTPA claims are
different because, as he correctly points out, a "plaintiff need not
prove the elements of fraud to sustain an action under" FDUTPA.
*Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000). But
as shown above, that the elements of a FDUTPA claim do not
perfectly overlap with the elements of a fraud claim does not
prevent Rule 9(b)'s particularity requirement from applying to a
FDUTPA claim that *sounds* in fraud based on the factual allegations
underlying the claim. *See Wilding*, 941 F.3d at 1127 (applying Rule
9(b) to negligent misrepresentation claim because the claim
"*sound[ed]* in fraud" (emphasis added)); *see also Olin v. Dakota Access,
LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) ("A claim may sound in
fraud even though it is brought under a statute that also prohibits
non-fraudulent conduct."). Tellingly, the elements of unjust
enrichment, civil theft, and negligent misrepresentation claims also
do not perfectly overlap with the elements of fraud. Yet we have
still held that those claims can nevertheless "sound in fraud" and

be subject to Rule 9(b) based on the factual allegations supporting them. *See Omnipol*, 32 F.4th at 1307 n.11; *Lamm*, 749 F.3d at 951. Pop's argument thus runs contrary to our precedent.

Nor is it relevant, as Pop points out, that FDUTPA "is a remedial statute designed to protect consumers." *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005). Nothing in Rule 9(b)'s text suggests that the particularity requirement turns on whether the statute providing the cause of action at issue is "remedial" or "designed to protect consumers." *See* Fed. R. Civ. P. 9(b). Indeed, we, along with other circuits, have acknowledged as much by applying Rule 9(b) to claims asserted under other states' remedial consumer protection statutes. *See, e.g., Young*, 57 F.4th at 875 (applying Rule 9(b) to a claim asserted under the Arizona Consumer Fraud Act); *Kahn*, 107 F.4th at 601 (explaining that, under Seventh Circuit precedent, "[a] deceptive practices claim under [Illinois's consumer protection statute] must meet Rule 9(b)'s heightened pleading standard"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of [California's consumer protection statutes]."). We thus find Pop's arguments unavailing.

We hold that FDUTPA claims that sound in fraud must comply with Rule 9(b)'s particularity requirement. We now turn to assessing whether Pop's FDUTPA claim sounds in fraud.

### 2.    Pop's FDUTPA claim sounds in fraud

We have not explored in depth how to determine whether a claim "sounds in fraud" such that Rule 9(b) applies to the claim. *See, e.g.*, *Young*, 57 F.4th at 875 (finding that Rule 9(b) applied to the plaintiff's claim because the claim was "based on allegations that [the plaintiff] relied on [the defendant's] intentional misrepresentations to his own detriment"); *Lamm*, 749 F.3d at 951 (stating summarily that negligent misrepresentation claims "sound[] in fraud under Florida law" (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993) (Cox, J., concurring in part and dissenting in part))). The most straightforward way of making the determination is by comparing a plaintiff's allegations to the elements of common law fraud. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105–06 (9th Cir. 2003) (comparing plaintiff's allegations to California common law fraud to determine whether Rule 9(b) applied to plaintiff's claims). If a plaintiff's allegations closely track the elements of common law fraud, then the plaintiff's claim sounds in fraud for purposes of Rule 9(b). *See id.* If not, then Rule 9(b) does not apply.[8]

"Fraud has no all-embracing definition." 37 Am. Jur. 2d *Fraud and Deceit* § 1. But "all agree" that it encompasses the following: "[A] false representation of a material fact made by one who knew that it was false . . . , made to one who did not know

---

[8] We acknowledge that more precise guidance might be needed in future cases. But we decline to provide that guidance here because, as discussed below, Pop's allegations clearly sound in fraud.

that it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to his damage." *United States v. Feldman*, 931 F.3d 1245, 1266 (11th Cir. 2019) (W. Pryor, C.J., concurring) (quotation omitted). Fraud can consist of affirmative misrepresentations as well as misrepresentations by omission. *See id.* at 1267; *Marsteller ex rel. United States v. Tilton*, 880 F.3d 1302, 1311 (11th Cir. 2018) ("At common law, fraud has long encompassed certain misrepresentations by omission." (quotation omitted)). At bottom, the "basic conduct" that common law fraud targets is "misrepresenting or concealing material facts." *SEC v. Jarkesy*, 603 U.S. 109, 125 (2024).

Pop's allegations—though meant to support a claim for a violation of FDUTPA—closely track the elements of common law fraud. To begin, Pop alleged that unknown influencer defendants failed to disclose their compensation from Luli Fama, and therefore "misrepresented the material relationship they ha[d] with the brand." That is, Pop alleged a "misrepresentation[] by omission." *Marsteller*, 880 F.3d at 1311. Pop also alleged that the influencers' paid relationship with Luli Fama was "material." The paid relationship between the influencers and Luli Fama was "undisclosed," so Pop did not know about it. And, at least according to Pop, failing to disclose the payments to the influencers was "a large part of Luli Fama's strategy" to "disguise [the influencers'] advertising as honest consumer recommendation"; in other words, the defendants' deception was intentional. And finally, Pop alleged that he "[r]el[ied] on the undisclosed paid

advertising" in making his purchase and that he suffered damages as a result.

Given these allegations, Pop's FDUTPA claim—even though it had different elements than fraud[9]—sounded in fraud. *See Feldman*, 931 F.3d at 1266 (W. Pryor, C.J., concurring) (laying out common law definition of fraud); *see also Vess*, 317 F.3d at 1103–04 (holding that where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," the claim is "said to be 'grounded in fraud'"). Indeed, Pop's complaint stated twice that the defendants engaged in "fraud." And he concedes on appeal that his complaint's "statement of facts include[d] fraudulent acts." Rule 9(b) therefore applies to Pop's FDUTPA claim.

Pop, however, stresses that he "d[id] not raise any claim for fraud" and instead "limit[ed] his claim[] to [a] statutory violation[] under FDUTPA." But again, the factual allegations underlying the claim—and not the claim's styling—determine whether Rule 9(b) applies. *See Omnipol*, 32 F.4th at 1307 n.11 ("Because [the plaintiffs'] claims of civil theft and unjust enrichment 'sound in fraud,' they are subject to Rule 9(b)'s requirements." (quotation omitted));

---

[9] The elements of a FDUTPA claim are "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). Unlike fraud, FDUTPA does not require that the complained-of practice deceive or induce the plaintiff himself; instead, it is enough to show "that a reasonable person would have relied on the representations" or been deceived by them. *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000).

*Lamm*, 749 F.3d at 951 (holding that "Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims" under Florida law because those claims "sound[] in fraud" (quotation omitted)).  Here, as discussed above, the complaint's allegations sound in fraud.  And a "general disclaimer" that a plaintiff is not alleging fraud cannot "immunize . . . nonfraud claims from the Rule 9 requirements."  *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) ("*First Horizon*").

Pop's FDUTPA claim sounds in fraud, so Rule 9(b) applies.[10] We now analyze whether Pop's complaint complied with Rule 9(b).

---

[10] All of Pop's FDUTPA theories are based on the allegations detailed above. Because those allegations sound in fraud, it follows that all of Pop's FDUTPA theories sound in fraud.  To be sure, Pop alleged generally that given the allegations above, the defendants "engaged in a deceptive act or unfair practice" in addition to "engaging in fraud."  That is, it seems that Pop tried to distinguish his fraud-based FDUTPA theory from his deceptive-act-based or unfair-practice-based FDUTPA theories.  But, again, the nature of the allegations supporting a claim—not the labels that a plaintiff uses—determines the application of Rule 9(b).  As discussed, Pop's allegations sound in fraud. And because those allegations were the only allegations underlying Pop's fraud, deceptive act, and unfair practice FDUTPA theories, all of Pop's FDUTPA theories sound in fraud.  That Pop styled his theories as asserting a "deceptive act" or an "unfair practice" in addition to "fraud" is not dispositive. *See Young*, 57 F.4th at 875; *Kahn*, 107 F.4th at 601 ("The applicable pleading standard does not turn on a formalistic invocation of the word 'unfair.'  It depends instead on the plaintiff's factual allegations." (citation omitted)).

We therefore need not decide whether a "deceptive act[s]" FDUTPA claim or an "unfair practice[s]" FDUTPA claim based on different allegations would be subject to Rule 9(b)'s particularity requirement.  (We note, however,

    B.     *Pop failed to allege his FDUTPA claim in compliance with Rule 9(b)*

Under Rule 9(b), a plaintiff "alleging fraud" must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). We have held that Rule 9(b) requires the plaintiff to allege "the who, what, when[,] where, and how" of the fraudulent conduct. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Stated differently, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

---

that the Seventh Circuit has held that "[a] deceptive practices claim under [Illinois's consumer protection statute] must meet Rule 9(b)'s heightened pleading standard, but an unfair practices claim need not if it is not based on fraud." *Kahn*, 107 F.4th at 601.) Here, it is enough to say that because Pop's allegations sound in fraud, and all his FDUTPA theories depend on those same allegations, Pop's FDUTPA claim, as a whole, sounds in fraud. *Cf. First Horizon*, 464 F.3d at 1277 (holding that "Rule 9(b) applies when the misrepresentation justifying relief under the Securities Act"—which is a "nonfraud" claim—"is also alleged to support a claim for fraud under the Exchange Act and Rule 10(b)-5"); *see also Vess*, 317 F.3d at 1103 (finding that a nonfraud claim is subject to Rule 9(b) when a plaintiff, although not required to do so, "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [his] claim").

Pop's complaint fell short of the Rule 9(b) standard.  Pop did not identify a single Instagram post that he or any putative class members saw and relied on in which the influencer defendants wore Luli Fama products or tagged Luli Fama.  The closest Pop came to doing so was on pages five and six of the complaint, where he stated that "Defendant Alexa Collins, for example, advertised for Luli Fama on Instagram more than ten times, without mentioning even once that she is paid."  He then inserted two screenshots of Collins's posts.  But critically, Pop did not allege when those posts were made,[11] when he saw them, if he saw those specific posts before purchasing Luli Fama products, or how those posts caused him to purchase the products at issue here.  Indeed, he never even alleged which products he bought, much less how the defendants inspired him to do so.  Such allegations, or the lack thereof, fail to allege "the who, what, when[,] where, and how" of the allegedly wrongful conduct.  *Garfield*, 466 F.3d at 1262.  And even if Pop had alleged the required information as to Collins, that would not make up for his lack of allegations concerning all the other defendants' conduct.  *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (explaining that under Rule 9(b) a plaintiff cannot "lump[] together all of the defendants in [his] allegations of fraud").

From Pop's allegations, all we know is that Luli Fama and the influencer defendants "devised [some type of] scheme in which [unspecified] influencers tag[ged] or recommend[ed]," at some

---

[11] Again, any dates were either illegible or not provided.

point, in some posts, "Luli Fama products, pretending they [were] disinterested and unaffiliated consumers." Because these allegations do not specify which defendants made which posts, what the posts said, when the posts were made, when Pop saw the posts, or how—in any detail—the posts caused Pop or anyone else to purchase which products, Pop's complaint failed to comply with Rule 9(b). The district court therefore properly dismissed Pop's complaint.

Having concluded that Pop's complaint was properly dismissed, we finally turn to determining whether the district court was required to allow Pop to amend his complaint.

### C.    *The district court did not err in dismissing Pop's complaint with prejudice*

The district court dismissed Pop's complaint with prejudice because it found that further amendment would be futile. On appeal, Pop argues that the pleading inadequacies identified by the district court could have been fixed with amendment. In response, the defendants defend the district court's futility determination. But they also offer another ground for affirmance, arguing that the district court did not have to let Pop amend his complaint because Pop failed to properly request leave to amend. As to this alternative argument, Pop contends that district courts must always give plaintiffs whose complaints are dismissed under Rule 9(b) at least one chance to amend. After review, we agree with the defendants that because Pop failed to properly request leave to

amend, the district court did not err in dismissing his complaint with prejudice.[12]

Federal Rule of Civil Procedure 15(a)(2) provides that a district court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). We have held, however, that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). That is, "[a] district court may dismiss a complaint with prejudice where the plaintiff fails to request leave to amend." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023).

Here, Pop did not properly request leave to amend his counseled complaint. The only place that Pop requested leave to amend was on the last page of his response in opposition to the defendants' motions to dismiss. We have held that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (quoting *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d

---

[12] We recognize that the district court dismissed Pop's complaint with prejudice only because the court found that further amendment would be futile. But as mentioned above, "[w]e may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman*, 871 F.3d at 1289. We choose to take that approach here.

1151, 1157 (11th Cir. 2018)).  In such a case, the request for leave to amend "possesse[s] no legal effect."  *Id.*  Because Pop's request for leave to amend his complaint was "imbedded within an opposition memorandum," it had "no legal effect."  *Id.*  Pop's request for leave to amend was thus null, meaning that—at least at first glance—the district court was free to dismiss Pop's complaint with prejudice.  *See Ounjian*, 89 F.4th at 862.

We have, however, carved out a narrow exception to the general rule that a plaintiff must properly request leave to amend before such leave must be given.  Namely, we have held that "[i]n the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to sua sponte allow a [plaintiff] one chance to remedy such deficiencies" even if the plaintiff fails to request leave to amend.  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citing *First Horizon*, 464 F.3d at 1280).

Pop argues that this exception applies because the district court dismissed his complaint for failing to comply with Rule 9(b).  But we find that the repleading exception does not extend so far as to apply here.[13]

As noted above, the repleading exception comes from our decision in *First Horizon*.  *See* 464 F.3d 1273.  There, the district court dismissed the plaintiffs' complaint for "fail[ing] to link their

---

[13] We need not and do not decide whether the repleading exception could ever apply to a dismissal under Rule 9(b).

specific allegat[ions] to the causes of action pled in their complaint." *Id.* at 1278 (quotation omitted). As we described it, "the complaint at issue in th[at] case [was] the proverbial shotgun pleading." *Id.* at 1279. "The central problem [was] that the factual particularity of the first 175 paragraphs [was] not connected to the otherwise generally pled claim in any meaningful way." *Id.*

We held that even though the district court correctly determined that the complaint was deficient, "the proper remedy was to order repleading *sua sponte*"—not dismissal. *Id.* at 1280. In coming to our conclusion, we observed: "It is not that we know that plaintiffs cannot state a claim but rather that we do not know whether they have. This is because plaintiffs have not connected their facts to their claims in a manner sufficient to satisfy Rule 9(b)." *Id.* That is, "the problem was not that [p]laintiffs did not allege enough facts, or failed to recite magic words; the problem lay in the fact that while [p]laintiffs introduced a great deal of factual allegations, the amended complaint did not clearly link any of those facts to its causes of action." *Id.* (quotation omitted). We concluded that "these observations sound more clearly in Rule 12(e)'s remedy of ordering repleading for a more definite statement of the claim, rather than in Rule 12(b)(6)'s remedy of dismissal for failure to state a claim." *Id.*

Pop argues that under *First Horizon*, the district court should have given him at least one chance to amend his complaint. However, we find that this case is not like *First Horizon*. Unlike the plaintiff in that case, Pop did not allege a "great deal of factual

allegations" and simply fail to "link . . . those facts to [his] cause[] of action." *Id.* (quotation omitted).  Instead, as discussed above, Pop simply "did not allege enough facts"—a deficiency that the plaintiff in *First Horizon* avoided.  *Id.*  In short, it is not that we "do not know whether" Pop has stated a claim; rather, we know that he has not.  *Id.*  *First Horizon* is thus inapposite here.

In sum, Pop failed to properly request leave to amend, and *First Horizon* does not excuse Pop's failure.  The district court thus did not err in dismissing his complaint with prejudice.

## IV.   Conclusion

For these reasons, we affirm the district court's dismissal of Pop's complaint with prejudice.

**AFFIRMED.**